# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-2120

———————————————

Century Surety Company

*Plaintiff - Appellant*

v.

Jim Hipner LLC; Robert Lopez; Huey Brock; Jose Chavez; Abraham Reyes

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of North Dakota - Bismarck

——————————

Submitted: September 20, 2016
Filed: November 23, 2016
[Published]

——————————

Before SMITH, BYE, and BENTON, Circuit Judges.[1]

——————————

PER CURIAM.

———————————————

[1]This opinion is being filed by Judge Smith and Judge Benton pursuant to 8th Cir. Rule 47E.

Century Surety Company ("Century") appeals from a final judgment of the district court[2] determining that Jim Hipner, LLC[3] ("Hipner") does have coverage under an umbrella policy entered into between Century and Hipner. After finding the notice provision in the policy ambiguous, the district court concluded that the governing law, the law of Wyoming, would consider Hipner's delayed notice of claim not to be untimely. Century appealed, seeking reversal of the district court's determinations that the notice provision is ambiguous and that Hipner gave timely notice. Because Wyoming law, however, had not definitively addressed whether an insurer must be prejudiced before being entitled to deny coverage when the insured has failed to give notice "as soon as practicable," we certified the question to the Supreme Court of Wyoming. *See* Wyo. Stat. Ann. § 1-13-106.

On certification, the Supreme Court of Wyoming adopted the notice-prejudice rule, holding that "prejudice to the insurer [is required] before coverage may be denied based upon a violation of a notice provision contained in the policy." *Century Sur. Co. v. Jim Hipner, LLC*, 377 P.3d 784, 791 (Wyo. 2016). Additionally, the court held that "an insurance clause is [not] enforceable where it excludes coverage unless the insured notifies the insurer 'as soon as practicable . . . whether [the insurer] [is] prejudiced or not.'" *Id.* at 792 (ellipses in original) (second and third alterations in original). After supplemental briefing to this court, we now affirm the district court.

---

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

[3]The named appellees in this case are Jim Hipner, LLC, Robert Lopez (Hipner's employee), Huey Brock (an injured passenger), Jose Chavez (an injured driver), and Abraham Reyes (an injured passenger). However, the present appeal relates only to the contractual relationship between Century and Hipner.

## I. *Background*

In 2010, Hipner, a trucking company, purchased a $2 million umbrella policy ("Century Policy") from Century. In paragraph 3, the Century Policy contains the following notice provision:

> b. If you notify any "underlying insurer" of an "occurrence" or an offense involving "bodily injury" or "personal and advertising injury[,"] you must see to it that we are also notified in writing as soon as practicable.

Later, in the same paragraph, the Century Policy contains an exclusion provision that states:

> Failure to notify us, as required per paragraphs 3. a. and 3. b. above, of an "occurrence" or offense as soon as practicable will result in exclusion of coverage whether we are prejudiced or not.

On March 31, 2011, one of Hipner's drivers created a road obstruction that caused a multi-vehicle collision ("the accident") in North Dakota. According to the North Dakota Motor Vehicle Crash Report, a passenger in a car that was rear-ended by another vehicle suffered injuries deemed minor at the time. The Motor Vehicle Crash Report indicates that the other persons involved in the accident had "non-incapacitating" injuries at the time of the accident. Jim Hipner ("Jim"), a co-owner of Hipner, learned of the accident the same day that it occurred.

Jim testified that, upon his arrival to the scene of the accident, the state patrol officer told him that "there were no serious injuries." Jim also testified that the officer told him that one of the passengers had "some numbness or tingling," but that "it was nothing to worry about" and that this "happens quite often in these cases." According

to the medical records, one person, Huey Brock, arrived at Trinity Hospital on March 31 unable to move his arms or legs.

On the day of the accident, Jim called and reported the accident to representatives at Willis of Wyoming and Great West Casualty Company ("Great West"), his company's primary insurers. But, no one at Hipner notified Century. In his deposition, Jim stated that he thought that notifying Willis of Wyoming satisfied his obligations to notify all of the insurance companies. On March 31, Great West set up a claim and began investigating the accident.

Brock's injuries rendered him quadriplegic. Jim testified that he did not know that Brock sustained significant injuries from the accident until May 2011. On September 20, 2011, Century received notice of the accident indirectly when Willis of Wyoming sent Century the policy renewal for Hipner. The next day, Century created an umbrella claim relating to the accident. On December 13, 2011, Great West sent its claim file, including the investigation materials, to Century. Century did not perform its own investigation of the accident because "[t]he duty to investigate the accident fell upon Great West Casualty. Century Surety relied upon Great West Casualty to perform a competent investigation." Nevertheless, Century later found fault with Great West's investigation, claiming that it was not thorough enough. After reviewing the materials that Great West sent to Century, Century concluded that Great West did not do a timely and thorough investigation of the claim. According to Century, Great West "did not do . . . the type of investigation that an insurance company should do when [it] receive[s] a claim involving injuries involving a quadriplegic." Century subsequently asked Great West to investigate further. Specifically, it asked Great West to retain an accident reconstructionist, but Great West declined that request and indicated that it would not hire an accident reconstructionist unless litigation resulted. Century admitted that nothing prevented it from obtaining an accident reconstructionist or investigating further.

In November 2012, Century received Brock's settlement demand but declined to participate in the settlement "based upon lack of coverage for Jim Hipner LLC under the Century Policy coupled with serious questions regarding liability and damages."

Century then filed the instant action in federal court seeking a declaratory judgment that Century does not have an obligation to defend or indemnify Hipner in connection with any claims arising out of or relating to the accident. Both Hipner and Brock filed motions for summary judgment, or in the alternative, a motion for partial summary judgment, requesting Century's claims for declaratory relief be denied. Century, in response, filed a cross-motion for summary judgment seeking a declaration that it has no obligation to defend or to indemnify Hipner in connection with the accident. Specifically, Century argued that it was not liable under Wyoming law because Hipner failed to provide written notice "as soon as practicable" as required by the Century Policy.

The district court determined that although the Century Policy clearly and unambiguously requires written notice of a claim, the "as soon as practicable" requirement is ambiguous. Citing to *Pacheco v. Continental Casualty Co.*, 476 P.2d 166 (Wyo. 1970), the district court concluded that Wyoming courts have found similar language ambiguous. After a "balancing of the beneficiary's right to have the policy liberally construed in his favor with the legitimate interest of the insurer in being protected from stale claims," *id*. at 169, the district court found that Century received timely notice under the Century Policy as a matter of Wyoming law.[4] The district

---

[4]Ultimately, the district court granted summary judgment in favor of Century, concluding that the policy was not triggered because there was no "ultimate net loss," as required by the insuring agreement and because Hipner's settlement with Brock did not allow judgment to be entered against Hipner. But the district court suggested that because of the personal-injury statute of limitations, Brock had time to sue Hipner in connection with the collision and attempt to establish that Hipner's liability and

court explained that "Century Surety's choice to rely on Great West's investigation and not to independently investigate the accident, posed the substantial obstacle to Century Surety ascertaining the facts surrounding the accident rather than Hipner LLC's failure to notify Century Surety for approximately three to four months."

## II. *Discussion*

On appeal, Century argues that the policy language at issue is unambiguous and that, applying Wyoming's notice-prejudice rule, it suffered prejudice from the delay in receiving notice of the accident as a matter of law.

"The construction and interpretation of the terms of [an insurance] policy are questions of law for the court, where there is no ambiguity in the language of the policy when applied to the undisputed facts, and it is error to leave its construction to the jury . . . ." *Tadday v. Nat'l Aviation Underwriters*, 660 P.2d 1148, 1155 (Wyo. 1983) (Thomas, J., concurring) (footnotes omitted) (quoting 46 C.J.S. Insurance § 1368 (1946)). Furthermore, "whether the notice-prejudice rule applies in this context is a question of law." *In re Centrix Fin., LLC*, No. 09-CV-01542-PAB-CBS, 2015 WL 3499853, at *4 (D. Colo. June 2, 2015).

As a threshold matter, the Supreme Court of Wyoming held in *Century Surety* that Century's exclusion provision "exclud[ing] coverage unless the insured notifies the insurer 'as soon as practicable . . . whether [the insurer] [is] prejudiced or not'" is unenforceable. 377 P.3d at 792 (ellipses in original) (second and third

---

damage exceed the underlying policy limits, notwithstanding the agreement fully releasing Hipner from all liability. Brock has now sued the insured, Hipner, for negligence in connection with the collision. Because the district court rejected Century's late-notice defense, collateral estoppel would preclude Century from raising the same defense if Brock or Hipner seeks umbrella coverage under the Century policy. For that reason, Century has standing to appeal the district court's judgment even though it was the prevailing party on summary judgment.

alterations in original). As a result, we must apply Wyoming's "two-step approach to an insurer's claim of late notice." *Id.* at 791.

>First, we must determine whether Hipner's
>
>notice was untimely, in violation of the notice requirement contained in the insurance policy. The question of the timeliness of the insured's delay in providing notice will depend upon a number of factors, including, but not limited to, the language of the notice requirement in the policy, the timing of the notice, the insured's knowledge of the underlying facts and ability to provide notice, the sophistication of the parties, the type of insurance at issue, and the reasonableness of any delay.

*Id.* (citing *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 729 N.E.2d 915, 922 (Ill. Ct. App. 2000)). Second, if we conclude that Hipner's notice was untimely, we must then determine "whether the insurer was prejudiced by that delay. If the insurer was prejudiced, then the insurer will be relieved of its obligation to provide coverage." *Id.*

### A. *Timeliness of Notice*

As to the first inquiry, the district court determined that although the Century Policy clearly and unambiguously requires written notice of a claim, the "as soon as practicable" requirement is ambiguous. It then balanced the parties' competing interests and found that Century received timely notice under the Century Policy as a matter of Wyoming law.

We conclude that the "as soon as practicable" requirement is unambiguous. Wyoming law provides that the phrase "as soon as practicable" means "within a reasonable time." *See Black & Yates, Inc. v. Negros-Philippine Lumber Co.*, 231 P. 398, 401 (Wyo. 1924) ("Where no time for performance is specified in a contract the

law implies that it must be performed within a reasonable time. This is substantially true even where the mode of defining the time of performance of a commercial contract is by the use of the phrase 'as soon as practicable' or other similar phrases." (citations omitted)).[5]

We also conclude, under the undisputed facts of this case, that notice to Century would have been no less "practicable" than the notice given to the primary carriers. The record shows that Hipner notified the underlying primary insurance companies on March 31, 2011; however, he never directly provided notice to Century. Instead, Century received notice of the accident indirectly when Willis of Wyoming sent Century the policy renewal for Hipner. Jim Hipner attributed his failure to notify

---

[5]Other courts are in agreement that the phrase "as soon as practicable" means "within a reasonable time." *See, e.g.*, *Weitz Co., LLC v. Lexington Ins. Co.*, 982 F. Supp. 2d 975, 1000 (S.D. Iowa 2013), *aff'd*, 786 F.3d 641 (8th Cir. 2015) ("First, regarding the 'substantial compliance' issue, this Court must interpret the phrase 'as soon as practicable' from Lexington/Allied's insurance policy. Iowa courts are in agreement that 'as soon as practicable' means 'within a reasonable time in light of the circumstances.'" (citation omitted)); *Hughey v. Aetna Cas. & Sur. Co.*, 30 F.R.D. 508, 511 (D. Del. 1962) ("Delaware law further provides a requirement to give notice 'as soon as practicable' means within a reasonable time under the circumstances; mere time lapse is not the determining factor."); *Greenway v. Selected Risks Ins. Co.*, 307 A.2d 753, 755 (D.C. 1973) ("The words 'as soon as practicable' have uniformly been held to mean within a reasonable time in view of all the facts and circumstances of each particular case."); *Bass v. Allstate Ins. Co.*, 187 A.2d 28, 30 (N.J. Super. Ct. App. Div. 1962) ("The policy in question requires that written notice of the occurrence shall be given to the company as soon as practicable. This phrase has been construed to mean within a reasonable time."); *Ragland v. Nationwide Mut. Ins. Co.*, 120 S.E.2d 482, 490–91 (W. Va. 1961) ("It is apparent from the decisions of courts of other jurisdictions and by the great weight of authority that: (1) The phrase 'as soon as practicable' means a reasonable time; and (2) more than five months is not, under normal circumstances, a reasonable time for an insured to report a fatal accident to his insurer."); *Wallace v. State Farm Mut. Auto. Ins. Co.*, 216 S.W.2d 697, 700 (Tenn. 1949) ("The language 'as soon as practicable' means a reasonable time.").

Century of the accident to his belief that notice to Willis of Wyoming satisfied his obligations to notify all of the insurance companies. Under the undisputed facts of this case, we conclude that Hipner did not provide timely notice of the accident to Century.

## B. *Prejudice to Century*

We must now determine whether Century was prejudiced by the delay in receiving notice of the accident. Century received indirect notice of the accident on September 20, 2011, four months after the accident occurred.

Century argues that the delay in receiving notice of the accident prejudiced it as a matter of law. Century contends that a rebuttable presumption of prejudice exists where the insured fails to show substantial compliance with a condition precedent, *see Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1067 (Wyo. 2002), and that Hipner failed to submit evidence rebutting the presumption of prejudice to Century based on the delay in receiving notice of the claim. Century cites the following evidence in support of its argument that it was prejudiced: (1) Century was not provided the claim file from Great West, the underlying insurer, until nine months after the accident; (2) Great West did not do a timely or thorough investigation of the claim; (3) Great West did not retain defense counsel until about five months after the accident; (4) Century learning of an accident that occurred months prior prevented Century from interviewing witnesses while the facts were still fresh in their minds; (5) the vehicles were not preserved; and (6) Century was unable to take scene photos.

Century's argument fails because Century does not show how the four-month delay in receiving notice actually prevented it from taking any meaningful investigatory steps that it would have done had there been no delay. This is because Century *chose not to investigate* once it received the investigative materials from Great West. If Century believed that something was missing after receiving the investigative materials, it could have launched its own investigation or followed up

with Great West's investigation, but it chose not to. Specifically, it did not (1) interview any persons involved; (2) take any photographs of any vehicle involved in the accident or the accident scene; (3) obtain any medical records regarding any individual involved in the accident other than what Great West provided; (4) contact any employers of any of the people involved in the accident; (5) hire any outside company to do an investigation regarding witnesses, statements, or photographs; or (6) hire an accident reconstructionist. Century admitted that nothing prevented it from investigating further. During the span of time between when Century received notice—September 2011—and when it denied coverage—May 2012—Century made no attempt to ascertain whatever information that it deemed necessary. For that reason, we hold, as a matter of law, that Century suffered no prejudice from the delay in notice. As the district court concluded:

> Century Surety's choice to rely on Great West's investigation and not to independently investigate the accident, posed the substantial obstacle to Century Surety ascertaining the facts surrounding the accident rather than Hipner LLC's failure to notify Century Surety for approximately three to four months. Century Surety cannot postpone its independent investigation based on its reliance on Great West's investigation and then later submit Great West's investigation was incompetent and that too much time has lapsed for Century Surety to perform an investigation; Century Surety cannot have it both ways.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

-10-